# Exhibit 32

# LIONBRIDGE

| | |
|---|---|
| STATE OF NEW YORK ) | |
| ) | |
| ) | ss |
| ) | |
| COUNTY OF NEW YORK ) | |

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached document RR.SM.2016.0101. I affirm that the linguist responsible for producing this translation is fluent in both the Danish and English languages.

_____

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me
this 6th day of June, 2022.

_____

LAURA E MUSICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MU6386791
Qualified in Queens County
My Commission Expires 01-28-2023

**Comments on selected decisions - SKM2016.281.HR**

**- rightful income recipient and dividend**

*By Associate Professor, Anders Nørgaard Laursen, PhD, Department of Law, Aarhus University*

## 1.     The facts

A Danish limited company was part of a larger international group. Since 2005, the Danish limited company had been owned by a company resident in Luxembourg. Prior to this, the company was directly owned by a company resident in the Cayman Islands. The Cayman Islands company was owned by a number of trusts located in Guernsey.

In 2006, the Danish company decided at the Annual General Meeting to pay dividends totaling approximately DKK 63 million. This was not a cash distribution, but a distribution consisting of five promissory notes from an overarching group company. However, the distribution was not reflected in the Luxembourg company's annual report for 2006, which, according to the company's representative, was due to "an obvious error". The representative also pointed out that companies in Luxembourg are not normally subject to audit requirements and that the error was due, among other things, to the absence of cash transfers to the company's bank account and to the large number of complex transactions in 2006.

As mentioned above, the distribution, which had actually led to a decrease in the Danish company's equity, was not initially disclosed in the Luxembourg company's 2006 annual report. Following an enquiry by the Danish Tax Agency on February 18, 2009, the annual report was corrected and a new set of accounts for 2006 was submitted to the Luxembourg Trade and Companies Register on March 19, 2009, and the tax return and corrected accounts were submitted to the Luxembourg tax authorities on March 23, 2009.

The Danish limited liability company had stated in the course of the proceedings that, under Luxembourg law, there is generally no requirement for statutory audits of accounts for companies of the type in question *("Société à responsabilité limitée"*, abbreviated to SARL). However, during the proceedings before the Supreme Court (*Højesteret*), audited accounts were drawn up for the years 2006-2008.

The legal issue in the case was whether the Danish limited liability company should have withheld dividend tax in connection with the distribution, cf. KSL ("Kildeskatteloven", the Danish Withholding Tax Act) § 65, and was therefore now liable for the dividend tax, cf. KSL § 69, or whether the dividend was tax exempt pursuant to SEL § 2(1)(c) in conjunction with the Parent-Subsidiary Directive or the Danish Double Taxation Convention with Luxembourg.

In SKM2015.397.ØLR(1) the High Court of Eastern Denmark ("Østre Landsret") had agreed with the Ministry of Taxation that the Danish limited company should have withheld withholding tax and was now liable for it. The Regional Court justified its judgment by stating that it had not been established that the failure to include the dividend in the income of the Luxembourg company was due to an error. The Court therefore held that the dividend had "in fact" been distributed "to another party" and that the conditions for exemption from withholding tax under Article 65 of the KSL were therefore not met. The Danish limited liability company was therefore liable for the assessment of the shortfall under KSL § 69(1), as it had not demonstrated that there had been no negligence in the distribution. The Supreme Court upheld the judgment of the High Court.

## 2.     Preliminary considerations

Anyone who deals with law - and not least tax law - is from time to time confronted with judgments which lead one quietly to ask oneself the heretical question whether the judgment in question is wrong. Immediately, however, one has to stop and recall *Alf Ross's* admonition that criticism of a Supreme Court judgment is "empty gibberish". (2) When the Supreme Court has spoken, the matter is settled.

Thus, while one cannot meaningfully speak of "right" and "wrong" Supreme Court judgments, one can speak of judgments which, from a jurisprudential analysis, appear "surprising" in terms of their result or reasoning. (3) SKM2016.281.HR is an example of such a judgment.

However, it should be clarified that the surprising aspect of the judgment is not - in view of the Supreme Court's evidential assessment - its outcome, but rather its reasoning, including the Supreme Court's application of jus. For the sake of clarity, the legal framework of the case will therefore be set out at the outset.

According to LL § 16 A, paragraph 1, dividends from stocks must be included in the calculation of taxable income. All dividends distributed by the company to current stockholders, etc., are regarded as dividends, cf. Section 16 A(2)(1) of the Act. Section 2(1)(c) of the Act states that companies with their registered office abroad, and that were specifically at issue, are also subject to tax on dividends covered by Section 16 A of the Act.

In the present case, however, the dividend distribution would be tax-free - and consequently the Danish company would not be obliged to withhold tax - if the taxation were to be reduced or waived under the provisions of a double taxation convention or under the Parent-Subsidiary Directive. (4) Similar conditions for tax exemption continue to apply, cf. SEL § 2(1)(c), 3 and 4.

Given the circumstances of the case, the question of whether the conditions for tax exemption under either the Parent-Subsidiary Directive or the Double Taxation Convention were met gave rise to a number of considerations of principle:

- whether the Luxembourg company could be considered the 'beneficial owner' of the dividend under the Double Taxation Convention as well as under the Parent-Subsidiary Directive?
- whether, under the Parent-Subsidiary Directive, it could be made a condition for the waiver of the dividend tax that the transferee was the beneficial owner?
- whether it would be contrary to the freedom of establishment under the current Article 43 of the EC Treaty (now Article 49 of the Treaty on the Functioning of the European Union) to tax the profits?
- whether the whole construction was a violation of the Danish Double Taxation Convention with Luxembourg?

However, the precondition for discussing these questions of principle was in the first place that the dividend was received by a company which could rely on EU law, including the Parent-Subsidiary Directive, or a double taxation convention. The taxpayer's lawyer argued that, as a matter of Danish law, the civil law owner of the stocks, i.e., the Luxembourg company, was the rightful income recipient from the stocks and that the burden of proving that the rightful income recipient was a company other than the civil law owner should rest with the Ministry of Taxation. As such, the Luxembourg company was entitled to rely on both the Double Taxation Convention and the Parent-Subsidiary Directive as

well as EU law in order to avoid the taxation of dividends.

The Government Lawyer, on the other hand, argued that it was not the Luxembourg company that *actually* received the dividend, despite the fact that the dividend was *formally* distributed to that company. This view was based on the *fact that* the dividend, in the form of five promissory notes, had not been received by the Luxembourg company, *that* the restructuring of the group that been carried out and by which the Luxembourg company had become the parent company of the Danish Limited Company lacked commercial justification, *that* the Luxembourg company was in fact a flow-through entity and *that* it must be presumed that the promissory notes in question were to be returned to the company which had issued them and not to the subsidiary of that company in Luxembourg. Finally, the Government Lawyer argued that it must be presumed that the company in Luxembourg "mistakenly" failed to recognise dividends of almost DKK 63 million and that the taxpayer must bear a heavier burden of proof that the failure to recognise dividends was solely due to a mistake. Thus, if the Luxembourg company was not, in the view of the Government Lawyer, the rightful recipient of income, there was no dividend distribution to a company enjoying protection under the Parent-Subsidiary Directive or a Danish double taxation agreement.

As indicated, the case was decided in favour of the Ministry of Taxation. The dividend recipient did not meet the conditions for tax exemption and therefore the Danish limited liability company should have withheld withholding tax in connection with the dividend distribution, cf. KSL § 65. Consequently, the Danish limited company was held liable for the failure to withhold tax, pursuant to Article 69(1) of the KSL, since it had not demonstrated that there had been no negligence in the distribution. The Supreme Court agreed with the Ministry of Taxation, stating the following reasons, which deserve to be quoted in full:

The Supreme Court accepts, for the reasons stated by the High Court, that [the Danish limited company] has not demonstrated that it actually distributed the dividends to [the Luxembourg company] and considers that the dividends were channeled through that company. The fact that, following the judgment of the High Court, audited annual reports for [the company in Luxembourg] for the years 2006, 2007 and 2008 have been drawn up on the basis of the documents already submitted in the present case cannot lead to a change in the assessment of the evidence.

The Supreme Court therefore finds that [the Danish limited company] has not established that the dividend was received by a foreign parent company which met the requirements for exempting [the Danish limited company] from withholding tax on dividends.

### 3.     What can be deduced from the judgment?

There are several points in the quoted premises which give cause for reflection.

*Firstly,* it is seen that the Supreme Court assumes that the dividend was "bypassed" by the Luxembourg company, but there was no indication of where the dividend had ended up. Similarly, the Court limited itself to noting that the dividends had been distributed "to a party other than" the Luxembourg company. The reason why this fact was not clarified was probably that the question was irrelevant. If the rightful recipient of the dividend could himself meet the conditions for tax exemption under SEL § 2(1)(c), the taxation of the dividend must already therefore be avoidable. However, since the other parent companies of the group - among which the rightful income recipient had to be found - were resident in Guernsey or the Cayman Islands, it was a given that none of them met the conditions for tax exemption under SEL § 2(1)(c). *Second, it* is worth noting that the Supreme Court did not find reason to reclassify the distribution as anything other than dividends, instead retaining its characterisation as such. This confirms the common assumption in Danish tax law that a capital gain "upwards" in a group must always be qualified as a dividend. (5) The fact that the recipient of the dividend is someone other than the immediate stockholder does not alter this fact.

*Thirdly,* it is important to note that the Supreme Court - in line with the High Court - emphasised that the burden of proof in relation to the actual receipt of the dividends rests with the taxpayer, and that the Supreme Court did not consider this burden of proof to have been satisfied. This fact seems to have played a decisive role in the outcome of the case(6) and, consequently, it is in this light that the judgment must be assessed, including in relation to its significance for the understanding of the concept of proper receipt of income.

### 4.     More on the significance of the judgment for the concept of "rightful recipient of income"

If, as indicated in paragraph 2, the reasoning of the judgment seems "surprising", this is due to the Supreme Court's application of the principle of "rightful recipient of income" (7).

The rightful recipient of income is usually the taxpayer who has *legal title to the income* at the time of acquisition. The distribution of income thus follows the rules of the law of obligations. (8) In this case, the taxpayer's lawyer argued, in accordance with this understanding of the principle, that the rightful income recipient should be the company in Luxembourg. This was justified by the simple fact that the company, as the sole stockholder in the Danish limited company, had *legal title* to the dividend at the time when the distribution was approved at the general meeting, i.e., at the time of acquisition. Whether the economic benefit in the form of the five promissory notes distributed by the Danish limited company had accrued to other companies in the group should be irrelevant in determining who was the rightful income recipient. This fact could, however, have a significant impact on which company should be considered the "beneficial owner" of the dividend, see below.

The fact that the Luxembourg company had failed to account for the dividend, whether or not this was due to an error, should also be irrelevant for the purposes of the concept of rightful income recipient. When the rightful recipient of income is determined by reference to the taxpayer who has legal title to the income at the time of acquisition, the act of collection itself is obviously of secondary importance. Furthermore, it must be argued that it would appear to be an obvious and entirely unacceptable tax planning opportunity if a company could avoid being considered as the rightful recipient of a dividend by simply failing to tax the dividend. Obviously, this cannot be the interpretation of the judgment.

Thus, while it is in many respects obvious what *cannot* be inferred from the Supreme Court's premises, the reader is left much more uncertain as to what *can actually be* inferred.

As already stated - and as *Jens Wittendorff* has explained in detail in his commentary on the High Court's judgment in the case - the uncertainty is due to the fact that the Supreme Court, with its judgment, breaks with the common interpretation of the concept of rightful income recipient, which has been expressed in both practice and process. In cases where dividends have accrued to persons other than the company's stockholder (or partner), the usual practice is *not to* deprive the stockholder of the status of the rightful recipient of income. On the contrary, the dividend is said to have 'suited' the stockholder's finances precisely because the stockholder is the rightful recipient of income, and it is therefore also justified to tax the stockholder on the dividend, even if the real economic benefit lies with a different taxpayer. (9)

As an example, the practice of so-called "triple taxation", where a company favors persons or companies with which the main

Copyright © 2016 Karnov Group Denmark A/S                                                              Side 2

stockholder has a special relationship, can be highlighted, see inter alia SKM2008.211.HR, SKM2004.106.HR and TfS 1990, 367 Ø. (10) The latter judgment is particularly illustrative. A company engaged in the business of buying and selling real estate sold it to the ex-wife of the main stockholder at a cut price. The transaction resulted in the company being taxed on the difference between the actual sale price and the market value at the time of sale, in the ex-wife being taxed on the equivalent amount as a gift and, most importantly, in the main stockholder being taxed on the difference as disguised dividends. The capital gain which had accrued to the ex-wife must necessarily have first passed through the private economy of the principal stockholder; the qualification as a disguised dividend must be tantamount to taxing the stockholder as the rightful recipient of income.

Thus, where a stockholder is deemed to be the rightful recipient of a *disguised* dividend, irrespective of to whom the economic benefit of the dividend accrues, the same must necessarily apply where the dividend is *declared*, as was the case in the present instance. However, when the Supreme Court's reasoning for the outcome of the judgment breaks, as indicated, with the general understanding of the concept of rightful recipient of income, other possible explanations for the reasoning of the judgment must necessarily be considered.

While the usual interpretation of the concept of the rightful recipient of income is that the stockholder is the rightful recipient of a dividend, an explanation of the grounds for the judgment may be found by analysing the very concept of stockholder in Section 16 A of the Act, where, as mentioned above, the basis for taxation of dividends is found, cf. section 2.

§ Article 16 A, paragraph 2, point 1, states that dividends are deemed to be "everything distributed by the company to current stockholders or unitholders". As regards the expression "current stockholders or unitholders", the preparatory works state that *the decisive factor will then be whether one is a stockholder (i.e., has the right of ownership of the stock) at the time of the declaration of the dividend.* (11) In the light of this, the judgment seems no less surprising, since there was agreement between the parties that the Luxembourg company was the civil law owner of the stocks.

However, one possible explanation for why the Supreme Court did not consider the Luxembourg company to be the rightful recipient of income *could* be that, in the Supreme Court's view, another company had the right of ownership of the stocks *for tax purposes*. As a rule, tax law concepts are interpreted in accordance with the corresponding civil law concepts. A person who is the owner of an item of stocks or units for civil law purposes must also be the owner of the same stocks, etc. for tax purposes. However, the principle that tax law concepts are defined in accordance with the corresponding civil law concepts may be waived. This typically happens where no certain civil law conceptual clarification has been made, such that tax law must necessarily provide its own qualification. Similarly, there may be cases in which the objectives pursued by the tax rules can be achieved only if the tax court carries out a conceptual determination independently of the civil law. (12)

The fundamental connection between tax law and civil law concepts is a highly debated phenomenon in Danish tax law, including not least the extent to which a specific tax law concept can be derived from the courts' judgments. (13) Without contributing further to this fundamental discussion here, it is nevertheless apparent that support can be found in Danish tax law theory for the designation of a different owner for tax purposes than the one who has civil law ownership of, for example, stocks and units.(14)

If it is assumed that the Supreme Court has considered a company other than the civil law owner of the stocks to have ownership of the stocks "for tax purposes", the reasoning of the judgment will be in line with the usual understanding of the rightful recipient of income concept. The Luxembourg company could not be the beneficial owner, as it did not have the *(tax) legal* title to the dividend at the time of the acquisition. Although this view could hypothetically explain the result of the judgment, it must be rejected that it was the view of the Supreme Court in the case at hand. In any event, it would seem strange if the Supreme Court were to depart from the civil law starting point when defining the concept of stockholder of its own motion - the Government Lawyer had not proceeded on the basis of a specific tax law concept of ownership. Furthermore, it must be argued that these premises do not explain the fact that the Supreme Court had given the concept of stockholding in LL § 16 A a special meaning in tax law. (15)

If it must therefore be rejected that the Supreme Court has made a special tax definition of the concept of stockholder, and the explanation of the "surprising" reasons for the judgment must be found elsewhere.

As pointed out above - and as also emphasised by *Aage Michelsen* in his commentary on the judgment of the Court of Appeal(16) - the evidential assessment seems to play a decisive role in the case. The interpretation of the judgment must therefore also be based on that assessment, or perhaps more precisely on the *consequences* of that assessment. It is thus essential to maintain that the Supreme Court did not consider it proven that the dividend was distributed to the company in Luxembourg, which must also mean that the Supreme Court *did not* accept the taxpayer's explanation that the lack of recognition of the dividend was due to an error.

If it is taken as a fact that the company in Luxembourg had certainly failed to tax the dividend, it is not surprising that the Supreme Court has not been willing to accept that the company could avoid the limited Danish tax liability.

However, the Supreme Court could have denied the tax exemption on the dividend by referring - as was to be expected(17) - to the fact that the Luxembourg company was not the "legal owner" of the dividend. (18) Under the same evidentiary circumstances, i.e., where it had to be assumed that the failure to account for the dividend in Luxembourg was *not* attributable to an error, it would hardly be a surprising consequence to deny the Luxembourg company the status of legal owner and, on that basis, to have taxed the dividend. Why the Supreme Court did not opt for this solution is, of course, a matter for the judges of the Supreme Court themselves. Without wishing this article to degenerate into a direct investigation of motives, it may nevertheless be interesting to consider in more detail why the Supreme Court did what it did.

One explanation could be this:

If the Supreme Court accepted that the Luxembourg company was the rightful recipient of the dividend, the Supreme Court would then have to decide whether the company fulfilled the conditions for the waiver of Danish tax on the dividend. This assessment did not merely involve a necessary consideration of whether the Luxembourg company was the "rightful owner" of the dividend. The Supreme Court would also have to consider whether it was a condition for the waiver of the right to tax under the Parent-Subsidiary Directive that the recipient of the dividend was in fact the beneficial owner of the dividend.

The answer to this question was in legitimate doubt prior to the implementation of the abuse clause in Article 1(2) of the Parent-Subsidiary Directive and its implementation in Section 3(1) of the Act, see SKM2012.26.LSR. (19)

Copyright © 2016 Karnov Group Denmark A/S                                                                                                                                 Side 3

Uncertainty in relation the Parent-Subsidiary Directive can only be clarified by the European Court of Justice, therefore the Supreme Court would be obliged to refer the matter to the Court of Justice of the European Union for a preliminary ruling.

However, in view of the facts of the case, and in particular what the Supreme Court considered to be proven in the case, it seems reasonable to assume that the Supreme Court would not accept that the proceeds could avoid the limited tax liability under any circumstances. By deciding the case in favour of the Ministry of Taxation, if only because the dividend was not distributed to a company which could rely on the Parent-Subsidiary Directive (or a double taxation convention with Denmark), the Supreme Court avoided going an unnecessarily long way around the EU Court of Justice to reach the result which the Supreme Court had already decided in the light of the evidential assessment.

If the judgment is read with these facts in mind, one is left with a judgment which has served its purpose, namely to clarify a concrete legal dispute between two parties. However, one is also left with a judgment which seems to be primarily based on evidential considerations and balance striking, and which therefore has only an extremely limited precedential value (if any at all) in terms of the principle of right of recourse. It also seems significant that both the High Court and the Supreme Court refer, as grounds, to the rather vague and foggy expressions concerning profits 'actually distributed to another party' and 'bypassed' by the Luxembourg company, whereas neither the High Court nor the Supreme Court at any time - unlike the parties themselves - uses the term 'rightful recipient'.

Copyright © 2016 Karnov Group Denmark A/S                                                                                                                 Side 4

(1) The judgment of the High Court of Eastern Denmark (Østre Landsret) is commented by Aage Michelsen in RR 2015, 71 and by Jens Wittendorff TfS 2015, 572.

(2) See Alf Ross, *Om ret og retfærdighed*, 1st edition (2nd ed.), 1966, p. 64 f.

(3) See Jan Pedersen in UfR 2014 B, p. 251 ff.

(4) Now Directive 2011/96/EU, but at the time of the dividend distribution Directive 90/435/EEC.

(5) See Jens Wittendorff in TfS 2015, 572.

(6) See Aage Michelsen in RR 2015, 71.

(7) See also Jens Wittendorff in TfS 2015, 572 with regard to the judgment of the Østre Lansret in the case.

(8) See Aage Michelsen and others, *Lærebog om indkomstskat*, 16th ed. 2015, p. 683. See also Henrik Dam, *Rette indkomstmodtager – allokering og fiksering*, 2003, pp. 327 et seq. and 335 et seq., Nikolaj Vinther, *Civilrettens styring af skatteretten*, 2004, pp. 85 et seq. and Martin Poulsen in SU 2009, 278.

(9) See Jens Wittendorff in TfS 2015, 572.

(10) See John Bygholm in SO 1994, p. 57 ff., Erik Werlauff in TfS 2002, 954 and Aage Michelsen et al, *Lærebog om indkomstskat*, 16 udg. 2015, p. 990 ff.

(11) See the comments on Article 11(4) of L 79 of 16/11 2005 (adopted as Law No 1414 of 12/21 2005).

(12) See Aage Michelsen and others, *Lærebog om indkomstskat*, 16th ed. 2015, p. 141 ff.

(13) It would hardly be useful to give a full account of the very extensive theory and the many divergent views in this area. The issue has been addressed in recent years in no less than two PhD theses: Nikolaj Vinther, *Civilrechttens styring af skatteretten*, 2004 and Jakob Bundgaard, *Skatteret og civilret*, 2006. See also Aage Michelsen et al, *Lærebog om indkomstskat*, 16. ed. 2015, p. 141 ff., Jan Pedersen et al, *Skatteretten* 1, 7. ed. 2015, p. 57 ff. and p. 123 f. and Rasmus Kristian Feldt- husen and Jacob Graff Nielsen in Susanne Pedersen et al, *Festskrift til Ole Bjørn*, 2003, p. 211 ff.

(14) See Jakob Bundgaard in SO 2006, p. 17 ff.

(15) In the light of the above, it should be possible to reject without further ado the Supreme Court's failure to recognise the existence of the Luxembourg company in tax law terms, in the light of the Supreme Court's own use of the phrase that the dividends were *"bypassed" by* that company. If there were no company for tax purposes, there would obviously be no entity to "bypass" the dividend.

(16) See Aage Michelsen in RR 2015, 71.

(17) See Jens Wittendorff in TfS 2015, 572.

(18) This view obviously presupposes that there can be no equivalence between the domestic concept of 'beneficial owner', as derived from Article 4 of the Income Tax Act, and the concept of 'beneficial owner', as derived from the double taxation conventions, cf.
The Interests and Royalties Directive Art. 1(1), (4) and (5). It follows from SKM2012.121.ØLR that the concept of beneficial owner must be interpreted autonomously, i.e., independently of the domestic law concept of rightful recipient of income. Whether this is correct must still be considered uncertain, cf. Jakob Bundgaard and Niels Winther-Sørensen and in SR-Skat 2007, p. 395 et seq. and p. 508 et seq. and Jens Wittendorff in SR-Skat 2010, p. 212 et seq.

(19) After the implementation of the abuse clause, there is little doubt that the waiver of Danish tax law requires that the recipient of the dividend is the legal owner of the dividend, see on the abuse clause Martin Poulsen in SR-Skat 2015, p. 97 ff. and Jakob Bundgaard in Jakob Bundgaard et al. *Den evige udfordring – omgåelse og misbrug i skatteretten*, 2015, p. 239 ff.

Case 1:18-md-02865-LAK  Document 1073-51  Filed 06/24/24  Page 8 of 13

# Kommentarer til udvalgte afgørelser - SKM2016.281.HR
## – rette indkomstmodtager og udbytte

*Af lektor, ph.d., Anders Nørgaard Laursen, Juridisk Institut, Aarhus Universitet*

## 1. Sagens faktum

Et dansk anpartsselskab indgik som en del af en større international koncern. Det danske anpartsselskab havde siden 2005 være ejet af et selskab hjemmehørende i Luxembourg. Før dette var selskabet ejet direkte af et selskab, som var hjemmehørende på Cayman Islands. Selskabet på Cayman Islands var ejet af en række trusts beliggende på Guernsey.

I 2006 vedtog det danske selskab på generalforsamlingen at udlodde udbytte på i alt ca. 63 mio. kr. Der var ikke tale om en kontant udlodning, men derimod om en udlodning bestående af fem veksler ("promissory notes") på et overliggende koncernselskab. Udlodningen fremgik imidlertid ikke af det luxembourgske selskabs årsrapport for 2006, hvilket ifølge selskabets repræsentant skyldtes "en åbenlys fejl". Repræsentanten henviste videre til, at selskaber i Luxembourg normalt ikke er underlagt revisionskrav, og at fejlen bl.a. skyldtes, at der ikke var kontante overførsler til selskabets bankkonto, ligesom der var mange komplicerede transaktioner i 2006.

Udlodningen, som havde medført en faktisk nedgang i det danske selskabs egenkapital, fremgik i første omgang som nævnt ikke af det luxembourgske selskabs årsrapport for 2006. Efter en forespørgsel fra SKAT den 18. februar 2009 blev årsrapporten rettet og et nyt regnskab for 2006 blev den 19. marts 2009 indleveret til Erhvervs- og Selskabsregistret i Luxembourg, ligesom der den 23. marts 2009 blev indsendt selvangivelse samt korrigeret regnskab til skattemyndighederne i Luxembourg.

Det danske anpartsselskab havde under sagen bl.a. oplyst, at der efter lovgivningen i Luxembourg som udgangspunkt ikke gælder et krav om lovpligtig revision af regnskaber for selskaber af den type, som der konkret var tale om *("Société à responsabilité limitée",* forkortet: SARL). Under sagens behandling for Højesteret var der imidlertid blevet udarbejdet et revideret regnskab for årene 2006-2008.

Sagens juridisk stridspunkt var, om det danske anpartsselskab burde havde indeholdt udbytteskat i forbindelse med udlodningen, jf. KSL § 65, og derfor nu hæftede for udbytteskatten, jf. KSL § 69, eller om udbyttet var skattefrit i medfør af SEL § 2, stk. 1, litra c, sammenholdt med moder-/datterselskabsdirektivet eller den danske dobbeltbeskatningsoverenskomst med Luxembourg.

I SKM2015.397.ØLR(1) havde Østre landsret givet Skatteministeriet medhold i, at det danske anpartsselskab burde have indeholdt kildeskat og nu hæftede derfor. Landsretten begrundede dommen med, at det ikke var godtgjort, at den manglede medregning af udbyttet til indkomsten hos selskabet i Luxembourg beroede på en fejl. Landsretten lagde derfor til grund, at udbyttet "faktisk" var udloddet "til anden side", og at betingelserne for at være fritaget for indeholdelse af udbytteskat i medfør af KSL § 65, derfor ikke var opfyldt. Det danske anpartsselskab var derfor ansvarlig for betalingen af det manglende beløb, jf. KSL § 69, stk. 1, idet selskabet ikke havde godtgjort, at der ikke var udvist forsømmelighed ved udlodningen.

Højesteret stadfæstede landsrettens dom.

## 2. Indledende betragtninger

Enhver der beskæftiger sig med jura – og ikke mindst skatteret – bliver fra tid til anden konfronteret med domme, som medfører, at man i sit stille sind stiller sig selv det kætterske spørgsmål, om den pågældende dom mon er forkert? Straks må man dog hanke op i sig selv og erindre *Alf Ross'* manende ord om, at kritik af en Højesteretsdom er at betragte som "tomt ordgyderi".(2) Når Højesteret har talt, er sagen afgjort.

Hvor man således ikke meningsfyldt kan tale om "rigtige" og "forkerte" højesteretsdomme, kan man derimod tale om domme, som ud fra en retsvidenskabelig analyse i henseende til deres resultat eller begrundelse forekommer "overraskende".(3)

SKM2016.281.HR er et eksempel på en sådan dom.

Det skal dog præciseres, at det overraskende ved dommen ikke – henset til Højesterets bevismæssige bedømmelse – er dens resultat, men derimod dens begrundelse, herunder Højesterets anvendelse af jus. For overskuelighedens skyld skal der derfor indledningsvis redegøres for sagens retlige ramme.

Efter LL § 16 A, stk. 1, skal der ved opgørelsen af den skattepligtige indkomst medregnes udbytte af aktier. Som udbytte betragtes alt, hvad der af selskabet udloddes til aktuelle aktionærer mv., jf. LL § 16 A, stk. 2, nr. 1. Det fremgår af SEL § 2, stk. 1, litra c, at også selskaber med hjemsted i udlandet, som der konkret var tale om, er skattepligtige af udbytte omfattet af LL § 16 A.

I den konkrete sag ville udbytteudlodningen imidlertid være skattefri – og følgelig ville det danske selskab ikke være forpligtet til at indeholde kildeskat – hvis beskatningen skulle nedsættes eller frafaldes efter bestemmelserne i en dobbeltbeskatningsoverenskomst eller efter moder-/datterselskabsdirektivet.(4) Der gælder fortsat tilsvarende betingelser for skattefrihed, jf. SEL § 2, stk. 1, litra c, 3. og 4. pkt.

Henset til sagens nærmere omstændigheder gav spørgsmålet om, hvorvidt betingelserne til skattefrihed efter enten moder-/datterselskabsdirektivet eller efter dobbeltbeskatningsoverenskomsten var opfyldt, anledning til en række principielle overvejelser:

- om selskabet i Luxembourg kunne anses for "retmæssig ejer" af udbyttet i henhold til dobbeltbeskatningsoverenskomsten såvel som til moder-/datterselskabsdirektivet?
- om det efter moder-/datterselskabsdirektivet kunne stilles som en betingelse for frafald af udbyttebeskatningen, at udbyttemodtageren var retmæssig ejer?
- om det ville være i strid med etableringsfriheden, jf. dagældende art. 43 i EF-traktaten (nu art. 49 i Traktaten om den Europæiske Funktionsmåde) at gennemføre en beskatning af udbyttet?
- om hele konstruktionen var udtryk for misbrug af den danske dobbeltbeskatningsoverenskomst med Luxembourg?

Forudsætningen for at diskutere disse principielle spørgsmål var dog i første omgang, at udbyttet var modtaget af et selskab, som kunne påberåbe sig EU-retten, herunder moder-/datterselskabsdirektivet, eller en dobbeltbeskatningsoverenskomst. Skatteyderens advokat procederede på, at det som udgangspunkt i dansk ret måtte være den civilretlige ejer af anparterne, dvs. selskabet i Luxembourg, der var rette indkomstmodtager af udbyttet på anparterne, og at bevisbyrden for, at rette indkomstmodtager var et andet selskab end den civilretlige ejer, måtte påhvile Skatteministeriet. Som sådan var selskabet i Luxembourg berettiget til at påberåbe sig såvel dobbeltbeskatningsoverenskomsten som moder-/datterselskabsdi-

rektivet og EU-retten i øvrigt med henblik på at undgå udbyttebeskatningen.

Kammeradvokaten procederede omvendt på, at det ikke var selskabet i Luxembourg, der *reelt* modtog udbyttet, til trods for at udbyttet *formelt* var udloddet til netop dette selskab. Synspunktet blev begrundet med, *at* udbyttet i form af fem promissory notes, ikke var blevet indtægtsført hos selskabet i Luxembourg, *at* den omstrukturering af koncernen, der var blevet gennemført, og hvormed selskabet i Luxembourg var blevet indsat som moderselskab for det danske anpartsselskab, savnede forretningsmæssig begrundelse, *at* selskabet i Luxembourg reelt fungerede som en gennemstrømningsenhed, og *at* det måtte have formodningen for sig, at tilbageførelsen af de omhandlede promissory notes, skulle ske til selskabet, der havde udstedt dem, og ikke til dette selskabs datterselskab i Luxembourg. Endelig gjorde kammeradvokaten gældende, at det måtte have formodningen imod sig, at selskabet i Luxembourg "ved en fejl" glemte at indtægtsføre et udbytte på næsten 63 mio. kr. og at der måtte påhvile skatteyderen en skærpet bevisbyrde for, at den manglende indtægtsførelse alene skyldtes en fejl. Når selskabet i Luxembourg således efter kammeradvokatens opfattelse ikke var rette indkomstmodtager, var der ikke tale om en udbytteudlodning til et selskab, der nød beskyttelse under moder-/datterselskabsdirektivet eller en dansk dobbeltbeskatningsoverenskomst.

Som angivet faldt sagen ud til Skatteministeriets fordel. Udbyttemodtageren opfyldte ikke betingelserne for skattefrihed, og derfor burde det danske anpartsselskab have indeholdt kildeskat i forbindelse med udbytteudlodningen, jf. KSL § 65. Det danske anpartsselskab blev følgelig pålagt en hæftelse for den manglende indeholdelse af kildeskat, jf. KSL § 69, stk. 1, idet selskabet ikke havde godtgjort, at der ikke var udvist forsømmelighed ved udlodningen.

Højesteret gav Skatteministeriet medhold med følgende begrundelse, som fortjener at blive citeret i sin helhed:

*Højesteret tiltræder af de grunde, som landsretten har anført, at [det danske anpartsselskab] ikke har godtgjort, at selskabet faktisk udloddede udbyttet til [selskabet i Luxembourg], og lægger til grund, at udbyttet blev ledt uden om dette selskab. Det kan ikke føre til en ændret bevisvurdering, at der efter landsrettens dom er udarbejdet reviderede årsrapporter for [selskabet i Luxembourg] for årene 2006, 2007 og 2008 på grundlag af de bilag, der allerede er fremlagt under denne sag.*

*Højesteret tiltræder herefter, at [det danske anpartsselskab] ikke har godtgjort, at udbyttet er modtaget af et udenlandsk moderselskab, som opfyldte kravene til at fritage [det danske anpartsselskab] for at indeholde udbytteskat.*

## 3. Hvad kan udledes af dommen?
Der er i de citerede præmisser flere forhold, som giver anledning til eftertanke.

*For det første* ses det, at Højesteret lægger til grund, at udbyttet blev "ledt uden om" selskabet i Luxembourg, men der fremgik intet om, hvor udbyttet var endt. Tilsvarende begrænsede landsretten sig til at bemærke, at udbyttet var udloddet "til anden side" end til selskabet i Luxembourg. Årsagen til, at dette forhold ikke blev belyst nærmere, har givetvis været, at spørgsmålet var uden betydning. Hvis den rette indkomstmodtager af udbyttet selv kunne opfylde betingelserne for skattefrihed i SEL § 2, stk. 1, litra c, måtte udbyttebeskatningen allerede derfor kunne undgås. Da de øvrige, overliggende koncernselskaber – blandt hvilke den rette indkomstmodtager måtte skulle findes – imidlertid var hjemmehørende på Guernsey eller på Cayman Islands, var det givet, at ingen af disse opfyldte betingelserne til skattefrihed i SEL § 2, stk. 1, litra c.

*For det andet* er det værd at bemærke, at Højesteret ikke fandt anledning til at omkvalificere udlodningen som andet end udbytte, men bibeholdt kvalifikationen som sådan. Dette bekræfter den almindelige antagelse i dansk skatteret om, at en formuefordel "opad" i en koncern altid skal kvalificeres som udbytte.(5) At udbyttemodtageren er en anden end den umiddelbare aktionær, ændrer ikke på dette forhold.

*For det tredje* er det væsentligt at bemærke, at Højesteret – i tråd med landsretten – betonede den faktiske udbyttemodtagelse som et bevistema, for hvilket skatteyderen havde bevisbyrden, og at Højesteret ikke anså denne bevisbyrde for løftet. Dette forhold synes at have spillet en altafgørende rolle for sagens udfald,(6) og følgelig må det være i det lys, dommen skal vurderes, herunder i relation til dens betydning for forståelsen af begrebet rette indkomstmodtager.

## 4. Nærmere om dommens betydning for begrebet "rette indkomstmodtager"
Når dommens begrundelse som angivet i afsnit 2 forekommer "overraskende", skyldes det Højesterets anvendelse af princippet om "rette indkomstmodtager".(7)

Rette indkomstmodtager er sædvanligvis det skattesubjekt, som på retserhvervelsestidspunktet har den *retlige adkomst til indkomsten*. Indkomstfordelingen følger således de obligationsretlige regler.(8) I sagen procederede skatteyderens advokat i overensstemmelse med denne forståelse af princippet da også på, at rette indkomstmodtager måtte være selskabet i Luxembourg. Dette blev begrundet med det simple faktum, at selskabet som eneste anpartshaver i det danske anpartsselskab havde *retlig adkomst* til udbyttet på det tidspunkt, hvor udlodningen blev vedtaget på generalforsamlingen, dvs. på retserhvervelsestidspunktet. Hvorvidt den økonomiske fordel i form af de fem promissory notes, der var udloddet fra det danske anpartsselskab, var tilgået andre selskaber i koncernen, burde være uden betydning for fastlæggelsen af, hvem der var rette indkomstmodtager. Dette forhold kunne dog omvendt have en potentiel betydning for, hvilket selskab der måtte anses for "retmæssig ejer" ("beneficial owner") af udbyttet, jf. nærmere nedenfor.

Det burde ligeledes være uden betydning for rette indkomstmodtagerbegrebet, at selskabet i Luxembourg havde undladt at indtægtsføre udbyttet, uanset om dette skyldtes en fejl eller ej. Når den rette indkomstmodtager udpeges ved at hense til, hvilken skatteyder der har den retlige adkomst til indkomsten på retserhvervelsestidspunktet, er selve indtægtsføringen naturligvis underordnet. Endvidere må det hævdes, at det turde være en åbenlys og helt uantagelig skatteplanlægningsmulighed, hvis et selskab kan undgå at blive betragtet som rette indkomstmodtager af et udbytte ved blot at undlade at indtægtsføre udbyttet. Selvsagt kan det ikke være sådan, dommen skal fortolkes.

Hvor det således i mange henseender er åbenbart, hvad der *ikke* kan udledes af Højesterets præmisser, står man som læser imidlertid langt mere usikker overfor spørgsmålet om, hvad der rent faktisk *kan* udledes.

Som allerede anført – og som *Jens Wittendorff* indgående har redegjort for i sin kommentar til landsrettens dom i sagen – skyldes usikkerheden, at Højesteret med dommen bryder med den almindelige fortolkning af rette indkomstmodtagerbegrebet, som er kommet til udtryk i såvel praksis som forarbejder. I tilfælde, hvor udbytte er tilfaldet andre end selskabets aktionær (eller anpartshaver), er det sædvanlig praksis, at aktionæren *ikke* frakendes status som rette indkomstmodtager. Tvært imod siges udbyttet at have "passeret" aktionærens økonomi, netop fordi aktionæren er rette indkomstmodtager, hvorfor det også er berettiget at beskatte aktionæren af

Copyright © 2016 Karnov Group Denmark A/S

udbyttet, selvom den realøkonomiske fordel ligger hos et andet skattesubjekt.(9)

Som et eksempel kan fremhæves praksis om såkaldt "trippelbeskatning", hvor et selskab begunstiger personer eller selskaber, som hovedaktionæren har et særligt forhold til, jf. bl.a. SKM2008.211.HR, SKM2004.106.HR og TfS 1990, 367 Ø.(10) Særligt illustrativ er sidstnævnte dom. Et selskab, som drev næring med køb og salg af fast ejendom, solgte en sådan til hovedaktionærens ekshustru til underpris. Transaktionen medførte dels, at selskabet blev beskattet af differencen mellem den faktiske salgspris og handelsværdien på salgstidspunktet, dels at ekshustruen blev beskattet af det tilsvarende beløb som en gave og dels – og for nærværende vigtigst – at hovedaktionæren blev beskattet af differencen som maskeret udbytte. Den formuefordel, som var tilgået ekshustruen, måtte nødvendigvis først have passeret hovedaktionærens privatøkonomi; kvalifikationen som maskeret udbytte måtte være ensbetydende med en beskatning af aktionæren som rette indkomstmodtager.

Hvor en aktionær således anses for rette indkomstmodtager af et *maskeret* udbytte, uanset til hvem den økonomiske fordel af udbyttet tilgår, må det samme nødvendigvis være gældende, når der er tale om *deklareret* udbytte, hvilket der i den konkrete sag var tale om. Men når Højesterets begrundelse for resultatet i dommen som anført bryder med den almindelige forståelse af begrebet rette indkomstmodtager, må der nødvendigvis overvejes andre mulige forklaringer på dommens begrundelse.

Hvor den sædvanlige fortolkning af begrebet rette indkomstmodtager tilsiger, at aktionæren (anpartshaveren) er rette indkomstmodtager af et udbytte, kan en forklaring på dommens begrundelse evt. findes ved at analysere selve aktionærbegrebet i LL § 16 A, hvor hjemlen til udbyttebeskatning som nævnt findes, jf. afsnit 2. Af LL § 16 A, stk. 2, nr. 1, fremgår det, at som udbytte betragtes "alt, hvad der af selskabet udloddes til aktuelle aktionærer eller andelshavere". Om udtrykket "aktuelle aktionærer eller andelshavere" hedder det i forarbejderne: *Det afgørende vil herefter være, om man er aktionær (dvs. har ejendomsret til aktien) på tidspunktet for deklarering af udbyttet.*(11) I lyset heraf forekommer dommen ikke mindre overraskende, idet der netop var enighed mellem parterne om, at selskabet i Luxembourg var civilretlig ejer af anparterne.

En mulig forklaring på, hvorfor Højesteret ikke anså selskabet i Luxembourg for at være rette indkomstmodtager, *kunne* imidlertid være, at et andet selskab efter Højesterets opfattelse havde ejendomsretten til anparterne i *skatteretlig henseende.* Sædvanligvis fortolkes skatteretlige begreber som udgangspunkt i overensstemmelse med de tilsvarende civilretlige begreber. Den, som i civilretlig henseende ejer en post aktier eller anparter, må som udgangspunkt også være ejer af selvsamme aktier mv. i skattemæssig henseende. Udgangspunktet om, at skatteretlige begreber fastlægges i overensstemmelse med de tilsvarende civilretlige begreber, kan dog fraviges. Dette sker typisk, hvor der ikke er foretaget nogen sikker civilretlig begrebsafklaring, hvorfor skatteretten nødvendigvis må foretage sin egen kvalifikation. Ligeledes kan der forekomme tilfælde, hvor de hensyn, der forfølges med de skatteretlige regler, kun kan nås, hvis skatteretten foretager en af civilretten uafhængig begrebsfastlæggelse.(12)

Den principielle sammenhæng mellem skatteretlige og civilretlige begreber er et særdeles omdiskuteret fænomen i dansk skatteret, herunder ikke mindst i hvilket omfang, der af domstolenes præmisser kan udledes en særlig skatteretlig begrebsdannelse.(13) Uden at skulle bidrage yderligere til denne principielle diskussion på dette sted, ses det dog, at der i dansk skatteretlig teori kan findes støtte for, at der kan udpeges en i skattemæssig henseende divergerende ejer end den, der har civilretlig ejendomsret til fx aktier og anparter.(14)

Hvis det lægges til grund, at Højesteret har anset et andet selskab end den civilretlige ejer af anparterne for at have ejendomsretten til anparterne "i skattemæssig henseende", vil dommens begrundelse være i overensstemmelse med den sædvanlige opfattelse af rette indkomstmodtagerbegrebet. Selskabet i Luxembourg kunne hermed ikke være rette indkomstmodtager, idet selskabet ikke havde den *(skatte)retlige* adkomst til udbyttet på retserhvervelsestidspunktet.

Uanset at dette synspunkt rent hypotetisk kunne forklare dommens resultat, må det dog afvises, at synspunktet har været bærende for Højesteret i den konkrete sag. Det ville i hvert fald forekomme besynderligt, om Højesteret af egen drift – kammeradvokaten havde ikke proderet på et særligt skatteretligt ejendomsretligt begreb – skulle fravige det civilretlige udgangspunkt ved fastlæggelse af anpartshaverbegrebet. Endvidere må det hævdes, at der ikke i præmisserne er dækning for, at Højesteret havde givet aktionærbegrebet i LL § 16 A en særlig skatteretlig betydning.(15)

Hvor det således må afvises, at Højesteret har foretaget en særlig skatteretlig kvalifikation af anpartshaverbegrebet, må forklaringen på den "overraskende" begrundelse for dommen skulle findes andetsteds.

Som påpeget oven for – og som tillige fremhævet af *Aage Michelsen* i hans kommentar til Østre landsrets dom(16) – synes den bevismæssige vurdering at spille en afgørende rolle i sagen. Fortolkningen af dommen må derfor også tage udgangspunkt i denne bevisvurdering, eller måske nærmere i *konsekvenserne* af denne bevisvurdering. Det er således væsentligt at holde fast i, at Højesteret ikke anså det for bevist, at udbyttet var udloddet til selskabet i Luxembourg, hvilket tillige må være ensbetydende med, at Højesteret *ikke* har accepteret skatteyderens forklaring om, at den manglende indtægtsføring af udbyttet beroede på en fejl.

Lægges det til grund som faktum, at selskabet i Luxembourg bevidst havde undladt at indtægtsføre udbyttet, er det vel ikke overraskende, at Højesteret ikke har villet acceptere, at selskabet kunne undgå den begrænsede danske skattepligt.

Højesteret kunne imidlertid havde nægtet skattefriheden på udbyttet ved at henvise til – hvad der vel var forventeligt(17) – at selskabet i Luxembourg ikke var "retmæssig ejer" af udbyttet.(18) Under de selvsamme bevismæssige forhold, dvs. hvor det måtte lægges til grund, at den manglende indtægtsføring af udbyttet i Luxembourg *ikke* kunne tilskrives en fejl, ville det næppe være en overraskende følge at frakende selskabet i Luxembourg status af retmæssig ejer og på den baggrund have gennemført en beskatning af udbyttet.

Hvorfor Højesteret ikke valgte denne løsning, ved naturligvis kun Højesterets dommere selv. Uden at denne artikel skal udarte sig til direkte motivforskning, kan det dog være interessant at overveje nærmere, hvorfor Højesteret gjorde, som den gjorde.

En forklaring kunne være denne:

Hvis Højesteret anerkendte, at selskabet i Luxembourg var rette indkomstmodtager af udbyttet, måtte Højesteret i næste led afgøre, om selskabet opfyldte betingelserne til frafald af dansk beskatningsret af udbyttet. I denne vurdering lå ikke alene en nødvendig stillingtagen til, om selskabet i Luxembourg var "retmæssig ejer" af udbyttet. Højesteret ville tillige være nødt til at tage stilling til, om det overhovedet var en betingelse for frafald af beskatningsretten efter moder-/datterselskabsdirektivet, at udbyttemodtageren rent faktisk var retmæssig ejer af udbyttet.

Svaret på dette spørgsmål herskede der inden gennemførelsen af misbrugsklausulen i moder-/datterselskabsdirektivets art. 1, stk. 2, og implementeringen heraf i LL § 3, stk. 1, berettiget tvivl om, jf. SKM2012.26.LSR.(19) Usikkerhed om anvendelsen af moder-/datterselskabsdirektivet kan alene afklares af EU-domstolen,

hvorfor Højesteret ville være forpligtet til at forelægge sagen for EU-domstolen som en præjudiciel forespørgsel.

Henset til sagens faktum, herunder navnlig hvad Højesteret anså for bevist i sagen, forekommer det imidlertid nærliggende at antage, at Højesteret under ingen omstændigheder ville acceptere, at udbyttet kunne undgå den begrænsede skattepligt. Ved at afgøre sagen til Skatteministeriets fordel, allerede fordi udbyttet ikke var udloddet til et selskab, der kunne påberåbe sig moder-/datterselskabsdirektivet (eller en dobbeltbeskatningsoverenskomst med Danmark), undgik Højesteret at gå en unødvendig lang vej omkring EU-domstolen for at finde frem til det resultat, som Højesteret allerede i lyset af den bevismæssige vurdering havde besluttet sig for.

Læses dommen med disse forhold in mente, står man tilbage med en dom, som har tjent sit formål, nemlig at afklare en konkret retstvist mellem to parter. Man står dog også med en dom, som primært synes at være båret af bevismæssige hensyn og konkrete afvejninger, og som derfor alene har en yderst begrænset præjudikatværdi (om overhovedet nogen) i henseende til princippet om rette indkomstmodtager. Sigende forekommer det også at være, at såvel landsretten som Højesteret som begrundelse henviser til de temmelig diffuse og tågede vendinger om udbytte, der er "faktisk udloddet til anden side" og er "ledt uden om" selskabet i Luxembourg, hvorimod hverken landsretten eller Højesteret på noget tidspunkt – i modsætning til parterne selv – anvender udtrykket "rette indkomstmodtager".

Copyright © 2016 Karnov Group Denmark A/S                      side 4

**(1)** Østre landsrets dom er kommenteret af Aage Michelsen i RR 2015, 71 og af Jens Wittendorff TfS 2015, 572.

**(2)** Jf. Alf Ross, Om ret og retfærdighed, 1. udgave (2. oplag), 1966, s. 64 f.

**(3)** Jf. Jan Pedersen i UfR 2014 B, s. 251 ff.

**(4)** Nu direktiv 2011/96/EU, men på tidspunktet for udbytteudlodningen direktiv 90/435/EØF.

**(5)** Jf. nærmere herom Jens Wittendorff i TfS 2015, 572.

**(6)** Jf. Aage Michelsen i RR 2015, 71.

**(7)** Jf. også Jens Wittendorff i TfS 2015, 572 for så vidt angår Østre landsrets dom i sagen.

**(8)** Jf. Aage Michelsen m.fl., Lærebog om indkomstskat, 16. udg. 2015, s. 683. Se også Henrik Dam, Rette indkomstmodtager – allokering og fiksering, 2003, s. 327 ff. og 335 ff., Nikolaj Vinther, Civilrettens styring af skatteretten, 2004, s. 85 f. og Martin Poulsen i SU 2009, 278.

**(9)** Jf. Jens Wittendorff i TfS 2015, 572.

**(10)** Jf. herom John Bygholm i SO 1994, s. 57 ff., Erik Werlauff i TfS 2002, 954 og Aage Michelsen m.fl., Lærebog om indkomstskat, 16 udg. 2015, s. 990 ff.

**(11)** Jf. bemærkningerne til § 11, nr. 4, i L 79 af 16/11 2005 (vedtaget som lov nr. 1414 af 21/12 2005).

**(12)** Jf. Aage Michelsen m.fl., Lærebog om indkomstskat, 16. udg. 2015, s. 141 ff.

**(13)** Det vil næppe være formålstjenstligt med en fuldstændig redegørelse for den særdeles omfattende teori og de mange divergerende opfattelser på dette sted. Spørgsmålet er i de seneste år behandlet i ikke mindre end to ph.d.-afhandlinger: Nikolaj Vinther, Civilrettens styring af skatteretten, 2004 og Jakob Bundgaard, Skatteret og civilret, 2006. Se også Aage Michelsen m.fl., Lærebog om indkomstskat, 16. udg. 2015, s. 141 ff., Jan Pedersen m.fl., Skatteretten 1, 7. udg. 2015, s. 57 ff. og s. 123 f. og Rasmus Kristian Feldthusen og Jacob Graff Nielsen i Susanne Pedersen m.fl., Festskrift til Ole Bjørn, 2003, s. 211 ff.

**(14)** Jf. Jakob Bundgaard i SO 2006, s. 17 ff.

**(15)** I forlængelse heraf bør det uden videre kunne afvises, at Højesteret i skatteretlig henseende har underkendt eksistensen af selskabet i Luxembourg, jf. Højesterets egen brug af formuleringen, at udbyttet blev *"ledt uden om"* dette selskab. Såfremt der ikke var et selskab i skattemæssig henseende, ville der naturligvis ikke være nogen enhed at lede udbyttet "uden om".

**(16)** Jf. Aage Michelsen i RR 2015, 71.

**(17)** Jf. Jens Wittendorff i TfS 2015, 572.

**(18)** Dette synspunkt forudsætter naturligvis, at der ikke kan sættes lighedstegn mellem det internretlige begreb "rette indkomstmodtager", som udledes af SL § 4, og begrebet "retmæssig ejer", som kendes fra dobbeltbeskatningsoverenskomsterne, jf. art. 10-12 i OECD's modeloverenskomst, samt rente-/royaltydirektivets art. 1, stk. 1, stk. 4 og stk. 5. Det fremgår af SKM2012.121.ØLR, at begrebet retmæssig ejer skal fortolkes autonomt, dvs. uafhængigt af det internretlige begreb rette indkomstmodtager. Hvorvidt dette er korrekt, må fortsat betragtes som usikkert, jf. Jakob Bundgaard og Niels Winther-Sørensen og i SR-Skat 2007, s. 395 ff. og s. 508 ff. og Jens Wittendorff i SR-Skat 2010, s. 212 ff.

**(19)** Efter misbrugsklausulens gennemførelse er der næppe tvivl om, at frafald af dansk beskatningsret fordrer, at udbyttemodtageren er retmæssig ejer af udbyttet, jf. om misbrugsklausulen Martin Poulsen i SR-Skat 2015, s. 97 ff. samt Jakob Bundgaard i Jakob Bundgaard m.fl. (red.), Den evige udfordring – omgåelse og misbrug i skatteretten, 2015, s. 239 ff.